## THE GRAND REPUBLIC, etc.

*(District Court, S. D. New York. April 11, 1883.)*

**1. RULES OF NAVIGATION—INSPECTORS' RULES—SECTION 4233—SECTION 4412.**

The rules of navigation established by the supervising inspectors under section 4412 of the Revised Statutes, are valid and binding, in so far as they do not conflict with the statutory rules of navigation in section 4233.

**2. SAME—RULE 2.**

Rule 2 of the supervising inspectors, which requires a steamer in the fifth situation, having the other steamer on her own starboard bow, to go to the right,.is not in conflict with rule 19 of the Revised Statutes, § 4233, though it takes away the option existing under the latter to go to the right or the left.

**3. CONTRARY SIGNALS—RULE 19.**

Where the steamer G. R. was coming up the middle of the North river, having the steamer A. about one point on her starboard bow about a mile distant, and the latter was coming down the river from the easterly side, heading somewhat to the Jersey shore, and the latter gave one whistle, which was not heard by the G. R., and the G. R., when half a mile off, gave two whistles, which were answered by one whistle, to which the G. R. replied with two whistles when only one-eighth mile distant, and a collision ensued, and neither steamer slackened her speed until they were within two or three lengths of each other, *held*, that both were in fault for not slacking speed sooner, and that the G. R. was further in fault for not porting her helm to go to the right, as required by the inspectors' rule 2.

In Admiralty.

*Wm. H. McDougal,* for Martin & Haskell.

*Stapler & Wood* and *C. Van Santvoord,* for co-libelant H. & H. Manuf'g Co.

*H. E. Tallmadge,* for co-libelant Garvey, adm'x.

*Henry T. Wing,* for insurance companies.

*D. & T. McMahon,* for claimants.

BROWN, J.  The several libels and petitions in this case were filed to recover damages for the loss of the steam-boat Adelaide, by a collision with the Grand Republic, in the middle of the Hudson river, off Leroy street, at about 7.50 P. M. on the nineteenth of June, 1880.  Both were stout, staunch, and powerful steam-boats, employed in the excursion and passenger business about New York.  The Adelaide was running to and from the iron pier at Long Branch. She had made her last landing on her return trip at the foot of Twenty-second street, in the North river, where she had discharged her passengers, and was steaming down the river towards her berth, near Communipaw ferry, Jersey City, where she was to lay up for the night.  The Grand Republic had been upon an excursion, and had landed her passengers at Jewell's wharf, Brooklyn, and was returning to lay up for the night at the foot of Twenty-fourth street, North river.  After rounding the Battery she kept off and reached about the middle of the river at Courtlandt street, when she was headed nearly directly up the stream, or probably a little westerly, and kept nearly upon the same course until she struck the Adelaide, near her forward gangway on the port side, causing the latter to sink in a few moments.

For the respondents it is claimed that the Adelaide, when first seen about a mile distant, was coming straight down the river, and much nearer to the New York shore, until shortly before the collision, when she gave a sheer to the westward and undertook to cross the bows of the Grand Republic, when it became impossible for the latter to avoid her.

The witnesses for the Adelaide testify that after leaving Twenty-second street she was heading for about Communipaw ferry, and that the Grand Republic, when first seen, somewhat above a mile distant, was also heading somewhat to the Jersey shore; that the Adelaide, when about a mile distant, gave one signal whistle, indicating that she would go to the right; that the Grand Republic, when half a mile distant, first replied with two whistles, and at the same time steered more to the westward, to which the Adelaide again gave one long whistle, to

which two whistles were again answered by the Grand Republic, which were followed by several danger signals from the Adelaide, when her helm was put hard aport and all steam put on in the endeavor to escape the Grand Republic, the collision appearing then to be otherwise unavoidable.

On the part of the Grand Republic it is testified that none of the whistles of the Adelaide were heard except the last danger signals, a few moments only before the collision; that her own first two whistles were given when the steamers were half a mile apart; the second two when they were about one-eighth of a mile apart; and that immediately thereafter she stopped and reversed at full speed, when from two to three lengths off, at the same time giving several danger signals.

Each claims that if the other had kept on her course when their first whistles were given the collision would not have happened; the Adelaide claiming that the Grand Republic would have passed port to port, and the Grand Republic claiming that they would have passed starboard to starboard.

It is not necessary to examine in detail the numerous points upon which the witnesses disagree. The collision could not have occurred except through a gross disregard of the rules of navigation by one or both of the vessels. There were no obstructions in the river on either side; the weather was clear; the wind light; the time less than a quarter of an hour after sunset; and the course of each was in full view of the other. Some controversy has arisen on the argument in regard to the courses of the two vessels in reference to each other, and whether these courses fell within what is known as the fifth situation in the supervisors' inspecting rules and their rule 2, or in the sixth situation,—that is, "head and head, or nearly so,"—within rule 1.

The test whether steamers will be considered as meeting "head and head" is whether the colored lights of each would be seen to the other. If that test be applied, the steamers were not in that situation, according to the evidence on both sides. From the evidence on the part of the Adelaide, and the probabilities of the case, as she was bound for Communipaw ferry, I have no doubt that on leaving Twenty-second street she took, as her witnesses testify, a direct course thither; nor have I any doubt that the Grand Republic, after passing Chambers street, was heading up the middle of the river, though probably a little to the westward. Upon these courses their paths would cross

by an angle of at least one point. Several witnesses from the Grand Republic also state that the Adelaide, from the time when she was first seen, bore from one to one and a half points on their own starboard bow. Her two colored lights could not, therefore, have been seen on board the Adelaide. When the Adelaide was first seen by the pilot of the Grand Republic off Vestry street, the former was about off Eleventh street, or three-quarters of a mile distant. From all the evidence, I am satisfied the Adelaide was then at least one-third of the distance out from the New York shore, as her pilot testifies; and that she bore from the Grand Republic one point on the latter's starboard bow. A drawing of the situation will show that the Grand Republic must, therefore, have been heading a little towards the westerly shore of the river, and that the situation was, therefore, the fifth, rather than the sixth, as indicated in the inspector's rules, (p. 38.)

It is not, however, material in this case which situation should be regarded as the true one, as respects the obligation of the Grand Republic, for, whether it was the fifth or the sixth, the pilot rules equally required the Grand Republic to port her helm and go to the right, there being nothing to make it necessary to depart from this rule.

By the nineteenth statutory rule (section 4233) the vessel which has the other on her own starboard side is required to keep out of the way; while the other, in such case is, by rule 21, required to keep her course; and this applies to the fifth situation. The Grand Republic having the Adelaide on her own starboard hand was, therefore, bound to keep out of the way. Independent of the inspector's rules she would, doubtless, have had the option of shaping her course either to the right or left, for the purpose of keeping out of the way. *New York, etc., Co.* v. *Rumball,* 21 How. 372, 384. The inspector's rules and directions (rule 2, pp. 33, 37) take away this option, and require a steamer in such case to pass to the right; while the other vessel, which by the statute (rule 23) is bound to keep her course, must, according to the inspector's directions, "continue on her course, or port her helm, if necessary to avoid a collision, each having previously given one blast of the steam-whistle."

The supervising inspectors are by section 4412 authorized to "establish such regulations, to be observed by all steam-vessels in passing each other, as they shall from time to time deem necessary for safety." The rules thus established are obligatory, so far as they are not in conflict with the statutory regulations. *The Milwaukee,*

1 Brown, Adm. 313, 321. Rule 2 of the inspectors, in taking away the option of the vessel bound to keep out of the way to go the left if she chooses, when in the fifth situation, is not in conflict with the statutory rules, and is, therefore, binding. The direction for the other vessel to "keep her course, or port her helm if necessary to avoid a collision," is unfortunate, I think, in the latter branch of it, as it is liable to be misinterpreted as an authority to vary from the statutory obligation to keep her course under rule 21, except in the special circumstances referred to in rule 24, although probably not so designed.

From the courses of the vessels, as I have above described them, it is manifest that there was danger of collision from the time of their first signals. The duty of each was perfectly fixed by the rules. The Grand Republic was bound to keep out of the way by passing to the right, and the Adelaide was bound to keep her course. Both were also required to slacken speed, and also to stop and back if necessary.

The witnesses on the part of the Adelaide contend that the Grand Republic was continually starboarding her helm in accordance with her two whistles; and one witness who was behind her testified that he saw her rudder blade indicating the helm hard to starboard just before the collision. Her own witnesses claim that her helm was not changed until she stopped and backed her engines, when the vessels were about two lengths apart, and that then she ported. From this it is manifest that the Grand Republic took no timely and proper measures to avoid the collision and keep out of the way, as she was bound to do. There was nothing in the circumstances making it necessary for her to starboard her helm rather than port; and if she had starboarded from the time of her first two whistles, when half a mile off, as the libelant's witnesses testify, she was violating the inspectors' rule which required her to pass to the right. If she made no change in her helm until within two or three lengths, as is claimed on her part, she persisted in her course in spite of obvious risk of collision long after she was bound by the rule to have ported in order to avoid it. The excuse given, that she was waiting to hear a reply to her two whistles, and that she heard none until after her second blast of two whistles, is not valid. I cannot doubt that single whistles were given from the Adelaide, as testified to by those on board of her, and by other witnesses who heard them. That they were not heard on board the Grand Republic did not excuse her from making a timely change of course as required by the rules.

The Grand Republic was also equally in fault for not slackening speed until within two or three lengths. Each steamer was going at the rate of about 11 miles an hour, and they were, therefore, approaching each other at a combined speed of about 22 miles an hour. The Grand Republic was 300 feet long; the Adelaide, about 240. Had the former stopped and reversed a quarter of a minute sooner, the Adelaide would have passed safely. The excuse given on the part of the Grand Republic for not slackening, that until her second signal of two whistles, when they were about an eighth of a mile apart, the Adelaide was coming down upon a parallel course upon her starboard side, cannot be accepted as the fact. The contrary appears, not merely from all the Adelaide's witnesses, but from the claimant's witnesses also; for, from their testimony, it appears that while the Adelaide was from one to one and a half full points on her starboard bow, when nearly a mile distant, at the time of the second whistle, she was still no further, but rather less, upon their starboard bow, though then only one-eighth of a mile apart; whereas, had they been proceeding on parallel courses, she must, in coming within an eighth of a mile, have broadened off very much more to starboard; so that, even in the night-time, and had only the Adelaide's red light been visible, the fact that she did not broaden off to starboard would have been conclusive evidence to the Grand Republic that the former was crossing the latter's bows. The Adelaide's course, however, was perfectly visible to the Grand Republic, and it was obvious that she was crossing the latter's bows, even before the sheer to the westward, at the time of the second two whistles. It is, therefore, impossible to hold the Grand Republic exempt from the charge of gross neglect of the rules, both in not stopping and backing sooner, as well as in not shaping her course to the eastward when at a safe distance.

It is equally obvious that the Adelaide was also in fault. The first signal of two whistles, after the Adelaide's one whistle, was, of itself, under the circumstances, the strongest warning of danger. The vessels were then but half a mile apart, and within a minute and a half of crossing each other's course. Although it was the duty of the Adelaide "to keep her course," it was also her duty to slacken speed, under rule 21, because there was evident danger of collision, within the meaning of that rule. *The D. S. Gregory*, 2 Ben. 226, 234; *The Milwaukee*, 1 Brown, Adm. 322; *The City of New York*, 15 FED. REP. 624-627. She made no attempt to slacken speed until after the second two blasts from the Grand Republic, when about an eighth of

a mile distant, or less than three lengths, and when within some 15 or 20 seconds of collision, and this attempt was immediately reversed by an order to move on at all possible speed. It is most probable, from the situation, that a collision at that time was unavoidable, and that the order by the captain of the Adelaide to go at all speed offered the only chance of escape then remaining, and that this would have been successful if the Grand Republic had earlier slackened speed, and stopped and backed seasonably, as she was bound to do. Although I am not prepared, therefore, to hold the Adelaide in fault for this last order, nor for her hard-a-port wheel in connection with it, this does not in the least diminish her responsibility for her previous neglect of rule 21, which required her to slacken her speed from the time of the first contrary signals, when there arose obvious risk of collision. Had the Adelaide then slackened her speed, she would afterwards have had no difficulty in reversing at once, if necessary, and thus have easily avoided the collision.

The damages must, therefore, be apportioned between the two vessels, and a reference ordered to compute the amount; and, at the same time, proof may be taken as to the rights and interests of the various libelants and petitioners.